IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

WISCONSIN MASONS HEALTH CARE FUND,
WISCONSIN MASONS APPRENTICESHIP &
TRAINING FUND, GARY BURNS,
BRICKLAYERS & TROWEL TRADES
INTERNATIONAL PENSION FUND,
INTERNATIONAL MASONRY INSTITUTE,
BRICKLAYERS & ALLIED CRAFTWORKERS
DISTRICT COUNCIL OF WISCONSIN,
WISCONSIN LABORERS HEALTH FUND,
BUILDING & PUBLIC WORKS LABORERS
VACATION FUND, WISCONSIN LABORERS
APPRENTICESHIP & TRAINING FUND, JOHN
J. SCHMITT, WISCONSIN LABORERS-
EMPLOYERS COOPERATION AND
EDUCATION TRUST FUND, WISCONSIN
LABORERS DISTRICT COUNCIL, BUILDING
TRADES UNITED PENSION TRUST FUND,
SCOTT J. REDMAN, and INDUSTRY
ADVANCEMENT PROGRAM/CONTRACT
ADMINISTRATION,

          OPINION & ORDER

          17-cv-28-jdp

       Plaintiffs,
  v.

SID'S SEALANTS, LLC, and SIDNEY N.
ARTHUR,

       Defendants.

---

Plaintiffs, various labor organizations (unions) and employee benefit plans (funds) and their trustees and fiduciaries, bring claims against defendants Sid's Sealants, LLC, and Sidney N. Arthur for violations of the Employee Retirement Income Security Act of 1974 (ERISA) and the Labor Management Relations Act of 1947 (LMRA). Dkt. 14. Plaintiffs allege that Sid's Sealants, LLC, failed to make contributions to the plaintiff funds, in violation of collective

bargaining agreements, trust plans, and trust agreements. Sid's Sealants, LLC, deducted and withheld working dues from their employees but failed to submit those dues to the plaintiff unions. Plaintiffs allege that Arthur kept the unremitted union dues for himself, in violation of Wis. Stat. §§ 895.446 and 943.20 (civil theft). Defendants answered and asserted five counterclaims against plaintiffs. Dkt. 16.

Now plaintiffs move to dismiss defendants' counterclaims pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. 6. Because defendants have failed to plead any actionable counterclaims, the court will grant plaintiffs' motion in full.

ALLEGATIONS OF FACT

The court draws the following facts from defendants' pleading, Dkt. 16, and construes the allegations "in the light most favorable to the [defendants], accepting as true all well-pleaded facts alleged, and drawing all possible inferences in [their] favor." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

In answering plaintiffs' first amended complaint, defendants deny that they have violated any collective bargaining agreements, trust plans, or trust agreements, that they have refused to submit contributions, and that they have violated any federal or state law. Dkt. 16, ¶ 1. Then defendants repaint the landscape: contrary to plaintiffs' allegations, at no point was Sid's Sealants, LLC, party to a collective bargaining agreement with the Wisconsin Bricklayers District Council, and at no point did the LLC assume rights and obligations under a collective bargaining agreement with the Wisconsin Bricklayers District Council. *Id.* ¶ 17. The Bricklayers unions never requested that its collective bargaining agreement with Arthur's sole proprietorship—an entity that preceded the LLC but that no longer exists—be assigned to the

LLC named here. Defendants admit that Sid's Sealants, LLC, signed a collective bargaining agreement with the Wisconsin Laborers District Council and that the LLC agreed to and did make timely payments to those unions.

In the absence of a binding collective bargaining agreement, defendants made *voluntary* payments to the "various funds," including the Bricklayers unions. *Id.* ¶ 22. Defendants made "voluntary payments" to plaintiffs "for past due voluntary contributions." *Id.* Defendants have paid plaintiffs $561,122.60 since March 2012. That "amount exceed[ed] the amount that would have been due" had defendants been legally obligated to make contributions to the Bricklayers unions, and it "exceed[ed] the amount due the Laborer Unions Plaintiffs' [sic]." *Id.*

Between April 2012 and November 2016, defendants repeatedly requested an accounting of the voluntary payments that they have made, "to determine whether there is in fact any obligation for additional payments, whether voluntary or otherwise." *Id.* ¶ 42. Neither plaintiffs nor plaintiffs' counsel responded. Defendants suspect that plaintiffs did not properly credit the payments, or credited them "in such a manner as to generate late fees, penalties, and interest obligations." *Id.* ¶ 43. Defendants demand an accounting and bring counterclaims for conspiracy to injure business reputation, breach of fiduciary duty, conversion and civil theft, and tortious interference with contract.

## ANALYSIS

A motion to dismiss pursuant to Rule 12(b)(6) tests the complaint's legal sufficiency. To state a claim upon which relief can be granted, a complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned,

the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint must offer "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citations omitted).

Plaintiffs attack all five of defendants' counterclaims. The court will address each in turn.

## A. Conversion and civil theft

Defendants allege that plaintiffs intentionally misapplied defendants' payments and, as a result, committed common law conversion and civil theft in violation of Wis. Stat. §§ 895.446 and 943.20. Had plaintiffs applied defendants' payments "to the appropriate funds," "there would be no amounts due and owing" and plaintiffs would not be entitled to recover unpaid interest, late fees, or other penalties. Dkt. 16, ¶ 59.

Wisconsin's civil theft statute describes five punishable offenses; defendants contend that they have stated a claim for two of them, Wis. Stat. § 943.20(1)(b) and (d). Subsection (1)(b) provides that an individual commits civil theft when he,

> [b]y virtue of his or her office, business or employment, or as trustee or bailee, having possession or custody of money . . . , intentionally uses, transfers, conceals, or retains possession of such money . . . without the owner's consent, contrary to his or her authority, and with intent to convert to his or her own use or to the use of any other person except the owner.

The subsection targets "those who are entrusted with the property of another and who retain or use that property in a way that does not comport with the owner's wishes." *Aslanukov v. Am. Express Travel Related Servs. Co.*, 426 F. Supp. 2d 888, 893 (W.D. Wis. 2006). So to state a

claim under § 943.20(1)(b), defendants must allege that plaintiffs had "possession or custody of" defendants' money.

Plaintiffs contend that they owned the money after defendants transferred it, so defendants cannot state a claim under § 943.20(1)(b). When one party transfers money to a second party to complete a transaction or purchase, the first party does not "entrust" its money to the second; the second party "obtain[s] ownership" of the money. *Id.* (concluding that when the plaintiff executed a contract to purchase traveler's checks from the defendant, the "[d]efendant obtained ownership of [the] plaintiff's money, not mere possession or custody, after the transaction was complete. The fact that the purchase agreement contained a provision allowing [the] plaintiff to obtain a refund [did] not mean that [the] defendant obtained only possession or custody of [the] plaintiff's money."). By its plain terms, subsection (1)(b) contemplates a trustee-like perpetrator: an individual entrusts his money to another, but the "trustee" converts the money for his own use. *See, e.g.*, *Brutyn, N.V. v. Anthony Gagliano Co.*, No. 04-cv-527, 2005 WL 3811423, at *13 (E.D. Wis. Nov. 29, 2005) (where the defendant "was a trustee for the disputed funds"); *In re Disciplinary Proceedings Against Evans*, 121 Wis. 2d 42, 357 N.W.2d 547, 548 (1984) (where an attorney "withdrew the funds held in his trust account . . . and converted the funds to his own use"). The subsection does not apply any time money changes hands and someone walks away unsatisfied.

Here, defendants allege that they transferred money to plaintiffs' counsel to contribute to the plaintiff funds; defendants do not allege that they retained an ownership interest in the money or otherwise "entrusted" the money to plaintiffs. True, defendants allege that they were not legally obligated to pay certain sums to plaintiffs—they deny that they entered into a collective bargaining agreement with the Bricklayers unions. But that does not change the fact

5

that defendants transferred money to plaintiffs' counsel *for plaintiffs*. Defendants paid plaintiffs more than they had to. But they do not allege that they did not intend to give the entire sum to plaintiffs. According to defendants, plaintiffs did not apply defendants' payments "to the appropriate funds" and, in so doing, wrongfully retained defendants' property. Dkt. 16, ¶¶ 59-60. But defendants do not allege any facts that suggest that the property was defendants'. So they do not state a claim under § 943.20(1)(b).

Defendants cite *Hartland Lakeside Joint No. 3 School District v. WEA Insurance Corporation*, No. 12-cv-154, 2012 WL 12929551 (E.D. Wis. July 27, 2012), but that case does not help them. There, the defendants took custody of funds that belonged to the plaintiffs when they applied for the funds on the plaintiffs' behalf. The defendants precluded the plaintiffs from applying for the funds themselves. And when the plaintiffs demanded that the defendants turn over the funds, the defendants refused. *Id.* at *3-5. The allegations were sufficient to state a claim under § 943.20(1)(b). *Id.* at *5. But here, plaintiffs did no such thing. They did not apply for funds that belonged to defendants or retain possession of defendants' funds when defendants demanded they be returned.

Defendants fare no better under subsection (1)(d). That subsection provides that an individual commits civil theft when he

> [o]btains title to property of another person by intentionally deceiving the person with a false representation which is known to be false, made with intent to defraud, and which does defraud the person to whom it is made.

Defendants do not allege that plaintiffs deceived defendants or made any false representation to secure defendants' money, so this section does not apply.

And defendants do not state a claim for common law conversion, either. "To allege a conversion claim, the plaintiffs must present facts showing that the defendants

6

(1) intentionally controlled or took property belonging to the plaintiffs; (2) the defendants controlled or took the property without the plaintiffs' consent; and (3) these acts resulted in serious interference with the plaintiffs' rights to possess the property." *Hartland*, 2012 WL 12929551, at *3 (citing *Bruner v. Heritage Cos.*, 225 Wis. 2d 728, 593 N.W.2d 814, 818 (Ct. App. 1999)). As discussed, defendants have not alleged any facts that show that plaintiffs took or controlled defendants' property or that defendants had any residual right to possess the money once transferred.

Defendants have not stated a claim for conversion or civil theft. Plaintiffs' failure to apply payments "to the appropriate funds" may come into play when assessing damages. But as pleaded, the allegations are not sufficient to state a claim for conversion or civil theft. The court will grant plaintiffs' motion to dismiss the counterclaim.

**B.  Breach of fiduciary duty**

Defendants allege that plaintiffs breached fiduciary duties when they misapplied defendants' payments and did not provide an accounting. Defendants paid plaintiffs $561,122.60 for "obligations for dues and payments." Dkt. 16, ¶ 51. According to defendants, plaintiffs had a fiduciary duty to apply that money to the appropriate funds.

To state a claim for breach of fiduciary duty, defendants must allege that (1) plaintiffs owed defendants a fiduciary duty; (2) plaintiffs breached that duty; and (3) the breach harmed defendants. *Berner Cheese Corp. v. Krug*, 2008 WI 95, ¶ 40, 312 Wis. 2d 251, 752 N.W.2d 800. Here, defendants summarily allege that plaintiffs owed defendants a fiduciary duty. But defendants "must plead . . . specific facts [that] would support such a finding." *Pommier v. Peoples Bank Marycrest*, 967 F.2d 1115, 1119 (7th Cir. 1992).

Defendants argue that their relationship with plaintiffs was not a creditor/debtor relationship: defendants were not legally obligated to pay plaintiffs because they did not execute a collective bargaining agreement. But the non-existence of a creditor/debtor relationship does not prove the existence of a fiduciary relationship. A "fiduciary duty" is "based on the conscious undertaking of a special position with regard to another." *Zastrow v. Journal Commc'ns, Inc.*, 2006 WI 72, ¶ 28, 291 Wis. 2d 426, 718 N.W.2d 51. Defendants acknowledge that only certain "special circumstances" create fiduciary relationships. Dkt. 11, at 8. In their brief, defendants argue that they placed "confidence" in plaintiffs by placing "contributions for the benefit of [their] employees" in plaintiffs' charge and that somehow those actions created a fiduciary relationship. *Id.* at 9. But defendants do not plead any facts to support that assertion. As discussed, defendants do not plead facts sufficient to show that plaintiffs acted as trustees. Defendants appear to allege just the opposite: that they paid plaintiffs for "obligations for dues." Dkt. 16, ¶ 51.

Defendants also argue that plaintiffs owe fiduciary duties to plan beneficiaries (i.e., defendants' employees) under ERISA, that plaintiffs breached those duties, and that somehow that creates a cause of action for defendants, who are neither employees nor plan participants. This theory does not work. Funds do not owe employers any fiduciary duties. *See* 29 U.S.C. § 1104(a)(1) ("[A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries . . . ."); *Cent. States, Se. & Sw. Areas Pension Fund v. Waste Mgmt. of Mich., Inc.*, 268 F.R.D. 312, 315 (N.D. Ill. 2010), *aff'd*, 674 F.3d 630 (7th Cir. 2012). And defendants do not bring suit on behalf of plan participants and beneficiaries, nor do they have standing to do so.

The bottom line is that defendants summarily allege that plaintiffs "had a fiduciary duty" to handle defendants' money a certain way. Dkt. 16, ¶ 52. That is a legal conclusion, and it is not enough under *Twombly/Iqbal*. *See Data Key Partners v. Permira Advisers LLC*, 2014 WI 86, ¶¶ 19, 38, 356 Wis. 2d 665, 849 N.W.2d 693 ("[L]egal conclusions stated in the complaint are not accepted as true, and they are insufficient to enable a complaint to withstand a motion to dismiss. . . . *Twombly*'s analysis of pleading requirements is instructive of the pleading analysis that is required upon a claim that a [party] breached his or her fiduciary duty."). The court will grant plaintiffs' motion to dismiss the counterclaim.

**C. Demand for an accounting**

Defendants allege that they have paid plaintiffs $561,122.60 and that they have no idea how plaintiffs applied that money to defendants' "contribution accounts." Dkt. 16, ¶ 43. They demand an accounting.

An accounting is an equitable remedy. "[T]o sustain a suit in equity for an accounting, some special and substantial ground of equity jurisdiction must be alleged, and it must appear that the remedy at law is inadequate." *Didion Milling, Inc. v. Agro Distribution, LLC*, No. 05-cv-227, 2007 WL 702808, at *10 (E.D. Wis. Mar. 2, 2007) (quoting *Ellis v. Sw. Land Co.*, 102 Wis. 409, 78 N.W. 583, 583-84 (1899)). Defendants must allege that they need the information ("the need of a discovery"), that the subject accounts are exceedingly complicated, or "the existence of a fiduciary or trust relation." *Id.* (quoting *Walter Diehnelt, Inc., v. Root*, 183 Wis. 535, 198 N.W. 388, 389 (1924)).

As just discussed, defendants do not adequately allege the existence of a fiduciary relationship with plaintiffs. On top of that, defendants do not explain why ordinary civil discovery in the course of this litigation would not be adequate. *See id.* at *11 ("Although an

accounting cause of action was traditionally utilized as a means of obtaining access to relevant records, the need for a party to pursue an accounting cause of action in order to obtain such access has been greatly minimized in light of the modern federal discovery rules."). "Absent the existence of a fiduciary relationship, an independent action for an accounting will be sustained only when an account is so complicated that absent an accounting a court or jury could not examine the account with the requisite accuracy." *Id.* at *12. Defendants do not plead any facts to that effect. The court will grant plaintiffs' motion to dismiss the demand for an accounting.

### D. Tortious interference with contract

Defendants allege that plaintiffs tortiously interfered with defendants' contracts with various general contractors. Plaintiffs required defendants to obtain lien waivers from them before collecting money from general contractors for work performed. According to defendants, plaintiffs' delay in providing the waivers interfered with defendants' right to payment under their contracts.

To state a claim for tortious interference with contract, defendants must allege that: "(1) an actual or prospective contract existed between the [defendants] and a third party; (2) the [plaintiffs] interfered with that contract or prospective contract; (3) the interference was intentional; (4) the interference caused the [defendants] to sustain damages; and (5) the [plaintiffs were] not justified or privileged to interfere." *Share Corp. v. Momar Inc.*, No. 10-cv-109, 2011 WL 2600740, at *2 (E.D. Wis. June 29, 2011) (citing *Shank v. William R. Hague, Inc.*, 192 F.3d 675, 681 (7th Cir. 1999)). Interference must be intentional and improper: the accused "'must act with a purpose to interfere with the prospective contract.' If an actor lacks the 'purpose to interfere' then his or her 'conduct does not subject him or her to liability even if it has the unintended effect of deterring a third party from dealing with the plaintiff.'" *Foseid*

10

*v. State Bank of Cross Plains*, 197 Wis. 2d 772, 541 N.W.2d 203, 209 (Ct. App. 1995) (quoting *Cudd v. Crownhart*, 122 Wis. 2d 656, 364 N.W.2d 158, 160 (Ct. App. 1985)) (alterations omitted) (citation omitted). And defendants must plead interference with a specific contractual right. *Sampson Invs. v. Jondex Corp.*, 176 Wis. 2d 55, 499 N.W.2d 177, 184 (1993). If interference does not cause breach, it must impair the value of the bargain: the alleged interference must "make[] the contract rights more costly or less valuable." *Id.* (quoting W. Page Keeton, et al., *Prosser and Keeton on Torts,* § 129 (5th ed. 1984)).

Plaintiffs contend that defendants do not allege interference with a specific contractual right. Defendants do not allege that plaintiffs caused the general contractors to breach their contracts with defendants (or vice versa). So they must allege interference sufficient to impair the contract's value. Defendants allege that plaintiffs knew that withholding the lien waivers would cause the general contractors to delay in paying defendants. But defendants do not allege that they had a right to payment by a certain time under the contracts. Defendants do not allege any facts that suggest that plaintiffs' delay in providing the lien waivers—two to three weeks—impaired the value of defendants' contracts. The court will grant plaintiffs' motion to dismiss the counterclaim.

E. **Conspiracy to injure business reputation**

Finally, defendants bring a counterclaim for conspiracy to injure business reputation, in violation of Wis. Stat. § 134.01. Defendants allege that plaintiffs and their counsel "acted in concert and conspired to damage" defendants' business reputation and to cause defendants financial injury. Dkt. 16, ¶ 45. More specifically, plaintiffs insisted that general contractors refuse to pay defendants for work performed until defendants produced a lien waiver from plaintiffs, and plaintiffs failed to timely provide lien waivers after defendants requested them.

The delay interfered with defendants' ability to satisfy its various financial obligations and, as a result, damaged defendants' business reputation and financial interests. Defendants allege that "[t]he only reason for this failure was to cause [defendants] to be in the position of not being able to meet its lawful obligations." *Id.* ¶ 46.D. Defendants allege that plaintiffs acted maliciously, as evidenced by their failure to provide "detailed accountings" of defendants' contributions and failure to timely provide waivers. *Id.* ¶ 47.A.

Wis. Stat. § 134.01 provides that

> [a]ny 2 or more persons who shall combine, associate, agree, mutually undertake or concert together for the purpose of willfully or maliciously injuring another in his or her reputation, trade, business or profession by any means whatever, or for the purpose of maliciously compelling another to do or perform any act against his or her will, or preventing or hindering another from doing or performing any lawful act shall be punished by imprisonment in the county jail not more than one year or by fine not exceeding $500.

To state a claim under § 134.01, defendants must allege "that (1) the [plaintiffs] acted together; (2) with a common purpose to injure the [defendants'] reputation or business; (3) with malice; and (4) the [defendants] suffered financial harm." *Virnich v. Vorwald*, 664 F.3d 206, 213 (7th Cir. 2011). "[T]o allege the requisite conspiracy . . . , [defendants] must allege an agreement between two or more people, and acts taken in furtherance of that agreement." *Id.*

Defendants' conspiracy allegations are conclusory. Defendants simply state that plaintiffs and their attorneys conspired because they enforced a lien waiver policy and delayed two to three weeks in producing said waivers. But defendants do not plead any facts that suggest that plaintiffs themselves cause the delay (i.e., the only act taken in furtherance of the purported conspiracy to injure defendants' business reputation). By all accounts, their

attorneys were responsible for the delay. The court will grant plaintiffs' motion to dismiss this final counterclaim.

ORDER

IT IS ORDERED that plaintiffs' motion to dismiss counterclaims, Dkt. 6, is GRANTED.

Entered August 31, 2017.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge